UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x

UNITED STATES,

        -against-

ELSON WARREN,

        Defendant.

-------------------------------------------------------- x

**OPINION & ORDER**

**04-cr-354 (NG)**

**GERSHON, United States District Judge:**

Defendant Elson Warren has submitted a motion seeking compassionate release under the First Step Act of 2018. For the reasons stated below, his motion is denied.

## I. BACKGROUND

### a. Mr. Warren's Indictment, Arrest, and Conviction

On February 6, 2015, Mr. Warren was charged in a superseding indictment with conspiracy to distribute and possess with intent to distribute 280 grams or more of cocaine base, engaging in a continuing criminal enterprise, unlawful use of a firearm during and in relation to the charged drug distribution conspiracy, being a felon in possession of a firearm, and illegal receipt of a firearm. Mr. Warren was indicted on the first three offenses in April 2004 but evaded arrest for a decade. In 2014, he was apprehended in the parking lot of a McDonald's restaurant in Brooklyn while carrying a loaded 9-millimeter gun. The two additional charges in the superseding indictment related to his possession of a firearm at the time of his arrest.

On April 13, 2017, Mr. Warren pled guilty to Conspiracy to Distribute and Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(b)(1)(A)(iii) and 846. On

November 20, 2017, I sentenced him to 16 years of incarceration, to be followed by five years of supervised release.[1]

### b. Mr. Warren's Request for Compassionate Release

On June 16, 2020, Mr. Warren sent a letter to the warden of FCI Fort Dix, the prison in which he is incarcerated, seeking compassionate release. Mr. Warren argued that his diagnosis of sarcoidosis increases his risk of serious infection from COVID-19.[2] He also noted that he had no disciplinary infractions, had successfully completed reentry programming, and planned to live with his aunt upon release. The warden did not respond to Mr. Warren's letter.

Mr. Warren submitted his motion to this court nearly a year later, on May 17, 2021. He asserted that he is immuno-compromised because he "has long suffering from Sarcoidosis, Chronic Interstitial Abnormality at both Lung Apices with associated Pleural Thickening, [Chronic Obstructive Pulmonary Disease or "COPD"] with extensive Interstitial Disease, multiple Nodular Lesions Bilaterally, and mild Pulmonary Fibrosis." Mot. at 2. Citing information from December 2020, he also claimed that FCI Fort Dix "is now enduring the largest COVID outbreak in the entire [Bureau of Prisons ("BOP")]" and that there is no vaccine available to prevent the disease. Mot. at 2, 6. He further complained that the measures taken at the prison facility to protect inmates from the virus had been inadequate. Lastly, Mr. Warren cited his remorse for his criminal behavior, his completion of extensive prison programming, his spotless disciplinary record, and his release plans.

---

[1] The sentencing proceeding occurred on November 13; the judgment was docketed on November 20.

[2] "Sarcoidosis is a disease characterized by the growth of tiny collections of inflammatory cells (granulomas) in any part of [the] body—most commonly the lungs and lymph nodes." Sarcoidosis, Mayo Clinic, www.mayoclinic.org/diseases-conditions/sarcoidosis/symptoms-causes/syc-20350358 (last visited Sept. 6, 2021).

### c. Mr. Warren's Medical Condition

With its response to Mr. Warren's motion, the government submitted recent medical records regarding Mr. Warren's treatment at the BOP. The records confirm that Mr. Warren has been diagnosed with sarcoidosis and that it has impacted his lungs. According to a report dated September 14, 2020, a chest x-ray performed on Mr. Warren showed that his lungs had remained stable since a prior chest x-ray on January 3, 2018. The report states:

> Normal lung volumes. Compared to 1/3/2018, there is stable appearance of chronic interstitial abnormality at both lung apices. There is also some mild associated pleural thickening which appears stable. The remainder of the lungs are clear. There is no new airspace opacity or consolidation. No pulmonary edema.

Dkt. No. 560-2 at 33. Another medical record describes Mr. Warren's sarcoidosis as "[w]ell controlled." *Id.* at 16. A list of Mr. Warren's recently prescribed medications includes only a topical steroid, presumably to treat the effects of sarcoidosis on his skin.

The medical records show that Mr. Warren tested positive for COVID-19 on December 21, 2020 and that his infection was entirely asymptomatic. They further indicate that, on March 11, 2021, Mr. Warren was offered, and declined, the Moderna COVID-19 vaccine.

On August 9, 2021, I issued an order notifying Mr. Warren that the medical records he claimed to have attached to his motion were not received by the court. Mr. Warren submitted those records by letter dated August 19, 2021. The records were primarily generated by New York City Health and Hospitals Corporation in 2014 during Mr. Warren's incarceration in New York City. The records discuss Mr. Warren's diagnosis of sarcoidosis and also reference "exten[si]ve COPD changes," although they contain no mention of a COPD diagnosis. Dkt. No. 561-1 at 2.

Additionally, in a letter to the court dated August 23, 2021, Mr. Warren wrote that he was informed on that same date by Dr. Patel at FCI Fort Dix that his sarcoidosis has worsened as a result of his COVID-19 infection. According to Mr. Warren, his Angiotensin Converting Enzyme

("ACE") level had spiked from 66 in September 2020 to 86 in July 2021. Mr. Warren stated that he was unable to promptly provide his recent medical records to the court, but that they could be requested by the court or government. Mr. Warren also wrote that he continued to worry about his exposure to COVID-19 at FCI Fort Dix, claiming that it has one of the lowest vaccination rates in the BOP.

On September 1, 2021, the government responded to Mr. Warren's letter and provided Mr. Warren's most recent medical records, including those from August 23, 2021. The records confirm that Mr. Warren's ACE level is elevated, but they do not support Mr. Warren's representation that his sarcoidosis has worsened. To the contrary, they state, "[Mr. Warren] has mild elevation of the ACE level, this however does not correlate with disease activity. Patient informed that it is common to see ACE levels in Sarcoidosis." Dkt. No. 563-1 at 2. The records again describe Mr. Warren's sarcoidosis as "Well controlled. Asymptomatic presently." *Id.* at 3. Finally, the records show that Mr. Warren refused the Pfizer COVID-19 vaccine on August 6, 2021.

### d. Mr. Warren's Disciplinary Record

When Mr. Warren submitted his request for compassionate release to the warden in June 2020, he correctly noted that he had no disciplinary infractions. On October 26, 2020, however, he was disciplined by the prison for using drugs or alcohol.

## II. STANDARD OF REVIEW

Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) gave the BOP "exclusive power over all avenues of compassionate release." *United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020). With the passage of the Act, the section was amended to allow defendants to bring motions themselves and to give courts the power to grant such motions, "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable," so long as "extraordinary and

4

compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In amending § 3582(c)(1)(A)(i), Congress "freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in [such] motions." *Brooker*, 976 F.3d at 237.[3] The defendant bears the burden of showing that he is entitled to compassionate release. *See, e.g.*, *United States v. Martinez*, 2021 WL 3374530, at *2 (S.D.N.Y. Aug. 2, 2021).[4]

**III. ANALYSIS**

Mr. Warren, who is 45 years old, cites several medical conditions, including sarcoidosis, COPD, and mild pulmonary fibrosis, to argue that he is particularly susceptible to serious illness from COVID-19. But Mr. Warren's medical records do not support the conclusion that he is especially vulnerable to the disease.

The Centers for Disease Control and Prevention ("CDC") has identified factors that increase an adult's risk of severe illness from COVID-19. Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, www.cdc.gov/coronavirus/2019-ncov/need-

---

[3] "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id.* at 237–38 (quoting 28 U.S.C. § 994(t)).

[4] A court may not modify a term of imprisonment under the Act until "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C § 3582(c)(1)(A). The Second Circuit recently concluded the statute does not impose a jurisdictional requirement, but rather a claims-processing rule that may be waived or forfeited by the government. *United States v. Saladino*, 7 F.4th 120 (2d Cir. 2021). Here, by not asserting that Mr. Warren's claim is unexhausted, the government has waived any argument that he has not met the exhaustion requirement. *See id.* In any event, Mr. Warren has fulfilled § 3582(c)(1)(A)'s requirement. He sent a letter to the warden of his facility on June 16, 2020 and never received a response. For these reasons, I address Mr. Warren's claim on the merits.

extra-precautions/people-with-medical-conditions.html (last visited Sept. 6, 2021). While the CDC does not mention sarcoidosis specifically, it does list chronic lung diseases, including those that "[have] damaged or scarred lung tissue such as interstitial lung disease," as well as COPD. *Id.* Here, while Mr. Warren's medical records show that he has "chronic interstitial abnormality at both lung apices," Dkt. No. 560-2 at 33, they indicate that his condition has not progressed in more than three years and that the only medication he was prescribed recently was a topical steroid. Therefore, I do not conclude that Mr. Warren's medical condition puts him at a high risk of severe infection from COVID-19 such that he is eligible for compassionate release.

Many cases have reached a similar conclusion. *See, e.g.*, *United States v. Stephens*, 2021 WL 663184, at *3 (D.D.C. Feb. 19, 2021) (denying compassionate release to inmate with sarcoidosis where there was evidence that his condition was relatively mild and was being treated with a topical steroid ointment); *United States v. Golden*, 2020 WL 5223542, at *3 (N.D. Ga. Aug. 26, 2020) (denying compassionate release where "[d]efendant has not argued that she is currently suffering from the primary symptoms of sarcoidosis, nor that her disease is of a severity that requires immune-modulating therapies"); *United States v. Buchanan*, 2020 WL 5026849, at *2 (E.D. Tenn. Aug. 24, 2020) (denying compassionate release to inmate with sarcoidosis and hypertension where "the medical records show that he is being treated with medication and has not suffered any serious consequences from" those ailments). In contrast, where greater evidence of risk is provided, courts have granted compassionate release to inmates with sarcoidosis. *See, e.g.*, *United States v. Way*, 2020 WL 7397796, at *1 (E.D. Pa. Dec. 17, 2020) (granting compassionate release to inmate with pulmonary sarcoidosis and hypertension, where he had difficulty breathing and was treated with medication that suppressed his immune system); *United States v. Collins*, 2020 WL 3892985, at *1, *3−4 (N.D. Ill. July 10, 2020) (granting compassionate

6

release to an inmate whose "sarcoidosis symptoms were worsening," whose doctor decided not to prescribe him a steroid because it could increase his susceptibility to COVID-19, and the prison in which he was incarcerated was experiencing a "severe outbreak" of the disease); *United States v. Fields*, 2020 WL 3129056, at *1 (W.D. La. June 11, 2020) (granting compassionate release to inmate with sarcoidosis, where the disease affected his breathing and the steroids he was prescribed for treatment suppressed his immune system).

In this case, the risk that Mr. Warren will contract COVID-19 is not hypothetical. Mr. Warren has, unfortunately, already contracted the illness in prison. However, he was entirely asymptomatic. If Mr. Warren were to contract COVID-19 again, it is of course possible that he will show symptoms of the disease. But that he had an asymptomatic infection in December 2020 does not support his assertion that he is at severe risk from COVID-19 and thus counsels against his release. *See United States v. Padilla*, 2021 WL 3036917, at *5 (D. Conn. July 19, 2021); *United States v. Huggins*, 2021 WL 3025459, at *2 (W.D. Va. July 16, 2021); *United States v. Abarca*, __ F. Supp. 3d __, 2021 WL 900357, at *3 (W.D.N.Y. Mar. 10, 2021).

As several courts have found, an application for compassionate release is also undercut by a refusal to accept a COVID-19 vaccine. *See, e.g.*, *Padilla*, 2021 WL 3036917, at *5 (collecting cases). I question Mr. Warren's expressed fear of contracting a COVID-19 infection when he has—twice—declined a vaccine that would both decrease his risk of infection and protect against serious illness and death. *See id.* It is indeed baffling that Mr. Warren relies on what he describes as FCI Fort Dix's low vaccination rate to support his release when he himself has foregone vaccination.

Finally, Mr. Warren cites the conditions at FCI Fort Dix as support for his application. Based on the number of inmate COVID-19 infections that have occurred at that facility (1,680), it

7

appears incontrovertible that, as Mr. Warren argues, the efforts taken by its administrators were insufficient to protect its inmate population from this disease. *See* Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/index.jsp (last visited Sept. 6, 2021). However, the outbreak is now under control. 1,899 inmates and 256 staff members at the facility have been fully vaccinated. *Id.* In addition (or, more likely, as a result), there are currently no inmates and just four staff members experiencing a COVID-19 infection. *Id.* Therefore, Mr. Warren has not shown that the current conditions at Fort Dix support his application.

In short, Mr. Warren has not demonstrated that "extraordinary and compelling reasons" warrant his release.[5]

**IV.    CONCLUSION**

For the reasons stated above, Mr. Warren's motion for compassionate release is denied. The Clerk of Court is directed to mail a copy of this order to Mr. Warren via first-class mail.

**SO ORDERED.**

/S/
**NINA GERSHON**
**United States District Judge**

September 7, 2021
Brooklyn, New York

---

[5] Mr. Warren seeks the appointment of counsel to assist him in prosecuting this motion. "[A] defendant filing a compassionate release motion or appealing from the denial of such a motion has no constitutional or statutory right to the assistance of counsel." *United States v. Fleming*, 5 F.4th 189, 192 (2d Cir. 2021). But a court may appoint counsel in its discretion, "which should be exercised bearing in mind, among other things, the 'merits of the indigent's claim,' 'the nature of the factual issues the claim presents,' as well as the party's 'apparent ability to present the case.'" *United States v. Collado*, 2021 WL 3023685, at *1 (S.D.N.Y. July 16, 2021) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986)). Because the issues presented in this motion are not legally complex and his arguments lack merit, Mr. Warren's request to appoint counsel is denied. *See United States v. Pina*, 2021 WL 364192, at *1 (S.D.N.Y. Feb. 3, 2021); *United States v. Santiago-Figueroa*, 2021 WL 37692, at *1 n.1 (S.D.N.Y. Jan. 4, 2021).